UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER WRIGHT, ROBERT MANNING, ELLIOT CHEFITZ, and JOSHUA STEISS, individually, and on behalf of a class of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED SERVICES AUTOMOBILE ASSOCIATION and USAA GENERAL INDEMINITY COMPANY,<br><br>Defendants. | Civil Action No. 23-cv-11155-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiffs Christopher Wright ("Wright"), Robert Manning ("Manning"), Elliot Chefitz ("Chefitz"), and Joshua Steiss ("Steiss"), individually and on behalf of a class of those similarly situated (collectively, "Plaintiffs")[1] bring a claim under Mass. Gen. Laws ch. 93A against United Services Automobile Association ("United Services") and USAA General Indemnity Company ("GIC" and, collectively, "Defendants") based on Defendants' categorizations of certain insurance customers. See generally [ECF No. 8 ("Amended Complaint" or "Am. Compl.")].[2] Pending before the Court is Defendants' motion to dismiss. [ECF No. 11]. For the reasons set forth below, the motion is DENIED.

---

[1] Plaintiffs seek class certification. [ECF No. 8 ¶¶ 61–70]. Though the Court has not yet addressed class certification in this case, it refers to Plaintiffs collectively for convenience.

[2] "Plaintiffs do not oppose dismissal of the breach of contract claim" (Count I), [ECF No. 21 at 8 n.2], and Count I is therefore DISMISSED.

## I.     BACKGROUND

The following facts are taken from the Complaint, the factual allegations of which are assumed to be true when considering a motion to dismiss.  See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).[3]

### A.     General Allegations

USAA provides private passenger automobile insurance ("PPA") to current and former military personnel "through four different insurers that operate under common management and control."[4]  [Am. Compl. ¶ 33]; see also [id. ¶ 2].  The four "insurers are United Services, GIC, USAA Casualty Insurance Company, and Garrison Property and Casualty Insurance Company." [Id. ¶ 33].

Plaintiffs here generally allege that Defendants improperly rely on policy holders' military "pay grade" to determine whether they receive insurance from GIC or United Services, [Am Compl. ¶¶ 1–2, 7], in violation of Massachusetts law, see, e.g., [id. ¶¶ 71–84].

### B.     Regulatory Background

In Massachusetts, insurers must submit proposed rates to the Commissioner of the Massachusetts Division of Insurance (the "Commissioner"), and the Commissioner must approve a PPA rate before it can go into effect.  See [Am. Compl. ¶ 47].  211 Mass. Code. Regs. § 79.04(10) provides, in relevant part, that "[t]he Commissioner may disapprove, after a hearing, or suspend any Rate Filing, Classification Plan, rule or Rate, rating plan or modification of any

---

[3] The parties request that the Court take judicial notice of several documents submitted as part of their briefing on this motion.  See [ECF Nos. 13, 14 (Defendants); ECF Nos. 21-1, 21-2 (Plaintiffs)].  Because the Court reaches its conclusions based on the allegations in the Complaint, it need not and does not consider the parties' proffered documents for purposes of this order.

[4] The Court will refer to all four entities collectively as "USAA."

of the foregoing if he or she finds that any of such elements fail to meet the requirements of the General Laws or are violative of public policy, and, therefore, subject to suspension and disapproval." 211 C.M.R. § 79.04(10). Section 79.04(12), in turn, provides the following:

> Underwriting Factors Prohibited. No Insurer or Insurance Company Group shall refuse to issue, renew or execute as surety a private passenger motor vehicle liability policy or bond, or any other insurance based on the ownership or operation of a motor vehicle because of any of the following factors, or otherwise use such factors to determine placement in a particular affiliate within an Insurance Company Group: . . . (h) occupation; (i) income[.]

211 C.M.R. § 79.04(12)(h)–(i). Moreover, Mass. Gen. Laws ch. 175E, § 4 provides, in relevant part, that "[r]ates shall not be excessive or inadequate, as herein defined, nor shall they be unfairly discriminatory." Mass. Gen. Laws ch. 175E, § 4(a).

### C.    Factual Background

#### 1.    Plaintiffs and Their Military Pay Grade Classifications

Plaintiffs here are firefighters, [Am. Compl. ¶ 4], who were all enlisted in the military in the past, see [id. ¶¶ 17, 21, 25, 29]. Each of them has PPA through GIC. [Id. ¶¶ 17, 21, 25, 29].

"The salaries of military personnel are set each year based on only two elements: pay grade and years of service." [Am. Compl. ¶ 40]. "All personnel at a particular pay grade and years of service receive the same pay." [Id.].

"Pay grades," more specifically, are "administrative classifications used primarily to standardize compensation across the military services." [Am. Compl. ¶ 41]. The paygrade for enlisted personnel is denoted by an "E" for enlisted, followed by a number that denotes the pay grade. See [id.]. For example, E-1 indicates an enlisted individual in paygrade level 1. See [id.]. "[A]lthough a paygrade may encompass military personnel of differing ranks, the pay for a particular grade, e.g., E-4 pay, is the same." [Id. ¶ 42]. "E-2s are paid more than E-1s, E-3s are paid more than E-2s, and . . . E-7s are paid more than E-6s, for each category of years of

3

service."  [Id. ¶ 43].  Manning's highest paygrade in the military was E-3, [id. ¶ 17], and Wright, Chefitz and Steiss' highest paygrade was E-4, [id. ¶¶ 21, 25, 29].

### 2. Defendants' Segregation of Insurance Policies

"Each of the four USAA companies insures a different segment of the military or military family members."  [Am. Compl. ¶ 34].  As "[r]elevant here[,] . . . United Services insures personnel whose highest pay grade is or was E-7 or above[,] while GIC insures personnel whose highest grade is or was E-1 to E-6."  [Id.].

By placing E-1 to E-6 policyholders with GIC, and E-7 and above policyholders with United Services, Plaintiffs allege that Defendants are segregating them based on both income and occupation.  [Am. Compl. at 7–9].  Regarding income, "for each category of years of service, every person in pay grades E-7 and above has a higher salary than every person in grades E-1 to E-6."  [Id. ¶ 44].  Accordingly, "[f]or policyholders who are currently in the military, . . . segregating E-1 to E-6 Policyholders into GIC and E-7 and Above Policyholders into United Services constitutes assigning them to affiliates based on income."  [Id.].  Similarly, "[f]or policyholders who are veterans, segregating E-1 to E-6 Policyholders into GIC and E-7 and Above Policyholders into United Services constitutes assigning them to affiliates based on former income."  [Id.].

With respect to occupation, Plaintiffs allege that "[t]he Department of Defense recognizes that military personnel are engaged in occupations and has created a set of standardized military occupation codes across each of the military services."  [Am. Compl. ¶ 45].  "Under the military's occupational coding system, each member is assigned a military occupational specialty ('MOS')."  [Id. ¶ 46].  "[T]he occupations of personnel in pay grades E-1 to E-6 differ from those in grades E-7 and above."  [Id. ¶ 6].

4

In addition, the premiums for Plaintiffs' GIC policies (for E-1 to E-6 policyholders) are higher than they would have been if they were placed in United Services (for E-7 and above policy holders). [Am. Compl. ¶¶ 19, 23, 27, 31]. Specifically, "USAA calculates premiums by multiplying the 'base rate' for each coverage selected by the policyholder for each vehicle by the 'relativities' applicable to the vehicle or driver." [Id. ¶ 48]. "Base rates are the same for each GIC policyholder and the same for each United Services policyholder[,] but GIC's base rates are significantly higher than United Services' base rates." [Id. ¶ 49]. "The differences between GIC's and United Services' base rates for the four primary coverages are so great that every or almost every GIC policyholder pays a higher premium than that policyholder would pay in United Services." [Id. ¶ 53].

Relativities, in turn, are "numbers associated with" more than "20 rating factors, or risk characteristics," used to categorize every driver and vehicle. [Am. Compl. ¶ 51]. The relativities numbers "reflect actuarial assessments of the risks posed by drivers or vehicles." [Id.]. "USAA uses the same rating factors and categories for GIC and United Services[,]" but the "[t]he relativities associated with the categories may or may not be the same for GIC and United Services." [Id.]. Accordingly, Plaintiffs allege that "[b]ecause GIC and United Services use the same rating factors and categories, it can be determined objectively whether a GIC policyholder would pay higher or lower premiums than a United Services policyholder posing the identical risk." [Id. ¶ 52].

### D. Procedural History

Plaintiffs filed the Amended Complaint on August 10, 2023. [Am. Compl.]. Defendants moved to dismiss on September 11, 2023. [ECF No. 11]. Plaintiffs opposed on October 17, 2023, [ECF No. 21], and Defendants filed a reply on October 23, 2023, [ECF No. 24].

## II.     STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must accept as true all well-pled facts, analyze them in the light most favorable to the plaintiff, and draw all reasonable inferences from those facts in favor of the plaintiff.  U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011).  "[A] complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief[,]'" Cardigan Mt. Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)), and set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Pitta v. Medeiros, 90 F.4th 11, 17 (1st Cir. 2024) (quoting Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008)).  Although detailed factual allegations are not required, a complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (citing Twombly, 550 U.S. at 570).  Rather, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. at 678 (quoting Twombly, 550 U.S. at 570).

## III.    DISCUSSION

### A.    Chapter 93A

Chapter 93A provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful.  Mass. Gen. Laws ch. 93A, § 2(a).  As the Massachusetts Supreme Judicial Court has explained, to determine whether "conduct rises to the level of an 'unfair' act or practice actionable under [Chapter 93A]," courts

consider "(1) whether the conduct is within 'at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers' or other businesses . . . ." H1 Lincoln, Inc. v. S. Wash. St., LLC, 179 N.E.3d 545, 557 (Mass. 2022) (quoting PMP Assocs. v. Globe Newsp. Co., 321 N.E.2d 915, 917 (Mass. 1975)).  Further, "the defendant's conduct must generally be of an egregious, non-negligent nature." Walsh v. TelTech Sys., Inc., 821 F.3d 155, 160 (1st Cir. 2016) (citation omitted).  "Chapter 93A liability is decided case-by-case, and Massachusetts courts have consistently emphasized the 'fact-specific nature of the inquiry.'" Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998) (quoting Linkage Corp. v. Trs. of Bos. Univ., 679 N.E.2d 191, 209 (Mass. 1997)).  "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a [Chapter] 93A violation is a question of law." Arthur D. Little, 147 F.3d at 54 (alteration in original) (quoting Ahern v. Scholz, 85 F.3d 774, 797 (1st Cir. 1996)).

Plaintiffs allege that Defendants violated Chapter 93A in three ways: (1) by "violating [Mass. Gen. Laws Ch.] 175E, § 4(a) and 211 C.M.R. 79.04 by placing E-1 to E-6 [p]olicyholders and E-7 and [a]bove [p]olicyholders into separate affiliates based on their income and occupation," [Am. Compl. ¶ 76]; (2) "[i]n charging E-1 to E-6 [p]olicyholders higher premiums than they would have been charged had United Services and GIC complied with 211 CMR 79.04," [id. ¶ 77]; and (3) "by falsely stating in filings with the Commissioner, that they comply with the provisions of 211 CMR 79.05(12) by not considering 'occupation' and 'income' in their policy placement decisions," [id. ¶ 78].

Defendants generally respond that (1) "[a]t best, Plaintiffs allege that USAA considered their *former* 'occupation' and *former* 'income' in its affiliate-placement decisions," [ECF No. 12 at 20]; (2) Plaintiffs improperly conflate "income" with "salary" because, for example, "[m]ilitary members can and do have all sorts of income beyond their military salaries, e.g. military bonuses, passive or investment income, household income . . . [,]" and military pay grades do not necessarily correlate to salaries in a way that supports a finding that "policyholders who are or were in military paygrades E-1 to E-6—including themselves—had lower salaries across the board than policyholders who are or were in paygrades E-7 and above," [id. at 20–21]; and (3) "[e]veryone who serves in the military, regardless of pay grade, branch, or rank, has the same 'occupation,' that is, the same job," [id. at 22].

With respect to the first factor of the unfairness analysis, "[f]or [a] practice to fall within the penumbra of a statute's concept of unfairness, it need not actually violate the statute. Otherwise, there would have been no need for the Massachusetts Supreme Judicial Court to refer to penumbras." Cooper v. Charter Commc'ns Ents. I, LLC, 760 F.3d 103, 111 (1st Cir. 2014). Although pay grade may not be the same thing as income and occupation,[5] such that Defendants' decision to place current and former service members in different insurance affiliates based on

---

[5] Plaintiffs argue that "exact equivalence" between pay grade and income and/or occupation is not required, [ECF No. 21 at 12–13], relying on Fuog v. CVS Pharm., Inc., [id.], which addressed a disparate treatment theory of discrimination and found that "a regulation or policy cannot use a technically neutral classification as a proxy to evade the prohibition of intentional discrimination, such as classifications based on gray hair (as a proxy for age) or service dogs or wheelchairs (as proxies for handicapped status)," Fuog, No. 20-cv-00337, 2022 WL 1473707, at *5 (D.R.I. May 10, 2022) (quoting Cmty. Servs., Inc. v. Wind Gap Mun. Auth., 421 F.3d 170, 177 (3d Cir. 2005)). At this stage, given the 93A standard discussed above, the Court need not and does not decide whether a proxy theory of discrimination applies in this case.

pay grade may not facially violate 211 C.M.R. § 79.04(12),[6] the Court finds that Plaintiffs have pled sufficient facts, at this stage, to support a plausible finding that USAA's practice of categorizing policy holders by pay grade falls within the penumbra of the prohibitions under § 79.04(12).[7]

Second, Plaintiffs allege that, after categorizing policy holders by pay grade, which is plausibly unfair, see supra, Defendants charge "GIC policyholder[s] . . . a higher premium than . . . United Services" policy holders, [Compl. ¶ 53]. Charging higher premiums based on unfair considerations is plausibly immoral, unethical, oppressive, or unscrupulous. See H1 Lincoln, Inc., 179 N.E.3d 545 at 557.[8]

Finally, policy holders in GIC are injured by having to pay higher premiums based solely on their pay grade. See [Compl. ¶¶ 49, 53]; H1 Lincoln, Inc., 179 N.E.3d 545 at 557.

In sum, at this stage at least, Plaintiffs have plausibly alleged that Defendants' practice of placing policy holders into different affiliates based on their military pay grade, see, e.g., [Compl. ¶¶ 3–4], violates Chapter 93A where these placements result in those individuals with lower pay grades paying a higher premium, see [id. ¶¶ 49–53]. Following discovery, which should shed light on how and why it was determined which insureds were placed into which pool, Defendants may ask the Court to revisit this issue.

---

[6] 211 C.M.R. § 79.04(12) does not distinguish between current or former income and occupation, and the Court will not, on this record, read either such requirement into the regulation.

[7] Although it is plausible that USAA's categorization of policy holders by pay grade is unfair under Chapter 93A, whether it actually is unfair is a question that this Court need not and does not decide on the record currently before the Court.

[8] USAA does not appear to dispute that it engages in this practice, see [ECF No. 12 at 9], and its knowing decision to do so is plausibly egregious and non-negligent. See Walsh, 821 F.3d at 160.

9

B.     **Filed-Rate Doctrine**

Defendants also argue that the filed-rate doctrine precludes this action. [ECF No. 12 at 16–19]. The filed-rate doctrine is "a set of rules that have evolved over time but revolve around the notion that [where regulated entities are required to file rates with the regulatory agency], . . . filings with the regulatory agency prevail over unfiled contracts or other claims seeking different rates or terms than those reflected in the filings with the agency." Arroyo Melecio v. P.R. Am. Ins. Co, 398 F.3d 56, 73 (1st Cir. 2005) (alteration in original) (quoting Town of Norwood v. F.E.R.C., 217 F.3d 24, 28 (1st Cir. 2000)). The doctrine is a "famously complex and sometimes criticized set of rules," id., and it is not clear that it applies to Massachusetts state agencies, id. ("it is simply not the case that any action which might arguably and coincidentally implicate rates, much less those determined by a state, rather than a federal agency, is governed by the doctrine."); but see Composite Co., Inc. v. Am. Int'l Grp., Inc., 988 F. Supp. 2d 61, 77 (D. Mass. 2013) (noting but not deciding that "it is difficult to discern why the regulatory authority of state agencies, vested in them by state legislatures, does not also deserve the deference afforded federal agencies by the filed rate doctrine").

Setting aside the complexities of the filed-rate doctrine in this context, for purposes of the present motion, the Court need not decide whether it applies. Some of the remedies that Plaintiffs seek, including for 93A violations, see [Am. Compl. at 17–18], do not directly challenge the rates approved and set by the Commissioner. See Composite Co. Inc. 988 F. Supp. 2d at 67, 68–69, 77–78 (where the plaintiff challenged the factors considered and data relied upon by an insurer in submissions to the Commissioner, finding "what [wa]s at issue [wa]s the defendants' conduct with regards to the data they supplied to the rate-setting agencies," and thus "[a] decision in favor of plaintiff would not discredit any decision of an administrative agency.").

Thus, because at the present stage the Court finds that at least some of the requested remedies are not barred by the filed-rate doctrine (assuming it applies), it declines to dismiss the case on this basis.

## IV.     CONCLUSION

Accordingly, Defendants' motion to dismiss, [ECF No. 11], is <u>DENIED</u>.

**SO ORDERED.**

May 15, 2024                                                                                  */s/ Allison D. Burroughs*
                                                                        ALLISON D. BURROUGHS
                                                                        U.S. DISTRICT JUDGE