UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHRISTOPHER WRIGHT, ROBERT MANNING, ELLIOT CHEFITZ, and JOSHUA STEISS, individually and on behalf of those similarly situated, | * * * * * * | |
| Plaintiffs, | * * | Civil Action No. 1:23-cv-11155-ADB Class Action |
| v. | * * * | |
| UNITED SERVICES AUTOMOBILE ASSOCIATION and USAA GENERAL INDEMNITY COMPANY, | * * | |
| Defendants. | | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Defendants United Services Automobile Association ("United Services") and USAA General Indemnity Company ("GIC" and, together with United Services, "USAA" or "Defendants") have asked this Court to certify its May 15, 2024 order denying their Motion to Dismiss to the U.S. Court of Appeals for the First Circuit for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  [ECF Nos. 30, 31]; see also Wright v. United Servs. Auto. Ass'n, No. 23-cv-11155, 2024 WL 2186850, at *5 (D. Mass. May 15, 2024).  Specifically, USAA seeks an immediate appeal regarding "whether the filed-rate doctrine bars plaintiffs' claim that they were overcharged for insurance" in violation of Massachusetts law.  [ECF No. 31 at 7].  Plaintiffs Christopher Wright, Robert Manning, Elliot Chefitz, and Joshua Steiss, on behalf of themselves

and others similarly situated (collectively "Plaintiffs"), oppose the motion.  [ECF No. 42

("Opposition" or "Opp.")].  For the reasons set forth below, Defendants' Motion is **<u>GRANTED</u>**.

## I.    BACKGROUND

### A.    Factual Background[1]

Plaintiffs allege that USAA engages in unfair and deceptive practices by segregating

current and former U.S. military servicemembers among risk pools for private passenger

automobile insurance ("PPA") based on rank which, they assert, is an impermissible proxy for

income.  <u>See</u> [ECF No. 8 ("Amended Complaint" or "Am. Compl.") ¶¶ 75–84]; Mass. Gen.

Laws ch. 93A, § 2(a).  Specifically, Plaintiffs assert that USAA relies on policyholders' military

"pay grade" to assign them to insurance pools, in violation of Massachusetts insurance

regulations that prohibit "determin[ing] [a policyholder's] placement . . . within an Insurance

Company Group" based on "occupation" or "income."  211 Mass. Code Regs. § 79.04(12)(h)-(i);

<u>see also</u> Mass. Gen. Laws ch. 175E, § 4(a) (providing that insurance rates "shall not be excessive

or inadequate . . . nor shall they be unfairly discriminatory"); [Am. Compl. ¶¶ 55–60].  The

gravamen of Plaintiffs' allegations is that USAA assigns policyholders at pay grades between

E-1 and E-6 to a pool with higher premiums (and which GIC manages) than policyholders at pay

grade E-7 or above (whose pool is managed by United Services), and in doing so, illegally

"determine[s] placement" based on "occupation" or "income."  [Am. Compl. ¶ 76].

Plaintiffs seek injunctive relief "prohibiting United Services and GIC from placing E-1 to

E-6 Policyholders into a separate affiliate from E-7 and Above Policyholders."  [Am. Compl. at

18].  Because Massachusetts insurers must submit proposed PPA insurance rates to the

---

[1] The Court draws the following facts from its order and memorandum denying USAA and GIC's
motion to dismiss.  <u>See</u> <u>Wright</u>, 2024 WL 2186850, at *1–3.

Commissioner of the Massachusetts Division of Insurance for approval before the rates may go into effect, see Mass. Gen. Laws. ch. 175A § 6(a), Plaintiffs further ask for an injunction (1) directing USAA "to submit to the Commissioner within a reasonable time a proposed rating plan for the combined E-7 and Above Policyholders and E-1 to E-6 Policyholders," (2) "prohibiting United Services and GIC from using maximum military pay grade as a rating factor in [a new] common company," and (3) "requiring United Services and GIC to respond to any concerns of the Commissioner until approval is gained for a proposed rating plan." [Am. Compl. at 18]. Finally, Plaintiffs ask for "restitution and/or damages to be calculated . . . based on the rating plan approved by the Commissioner." [Id.]

### B.    Procedural History

#### 1.    Denial of Rule 12(b)(6) motion

Defendants moved to dismiss under Rule 12(b)(6), contending (1) that Plaintiffs had not stated a claim under Chapter 93A and (2) that the filed-rate doctrine, which precludes courts from reviewing utility and insurance rates set by regulatory agencies, barred Plaintiffs' claims. See [ECF No. 12 ("Mot. to Dismiss") at 10]. Plaintiffs opposed, arguing that the filed-rate doctrine did not apply in this case because: (1) the Amended Complaint did not challenge the rates approved by the agency; (2) the First Circuit has not held that the filed-rate doctrine applies to state agencies; and (3) even if applicable, the doctrine does not bar the injunctive relief sought. [ECF No. 21 ("Opp. to Mot. to Dismiss") at 10–17]. The Court denied the motion on May 15, 2024, concluding that "at this stage at least, Plaintiffs have plausibly alleged that Defendants' practice of placing policy holders into different affiliates based on their pay grade violates Chapter 93A," and that a ruling on the filed-rate doctrine was therefore not necessary because,

even assuming the doctrine applied to state agencies, at least some of Plaintiffs' requested relief would "not [be] barred by the filed-rate doctrine."  Wright, 2024 WL 2186850, at *5.

### 2.       Motion to Certify for Interlocutory Appeal

On June 12, 2024, Defendants moved for the Court to certify to the First Circuit whether the filed-rate doctrine requires dismissal of this case.  [ECF Nos. 30, 31].  Plaintiffs opposed on July 3, 2024, [ECF No. 42], and Defendants filed a reply on July 17, 2024, [ECF No. 43].  The parties presented oral argument on the pending motions on August 14, 2024.  [ECF Nos. 46, 47].

## II.    DISCUSSION

### A.     Legal Standard

Ordinarily, federal circuit courts have jurisdiction only over appeals from "final decisions" of district courts in civil cases, 28 U.S.C. § 1291, but Congress has conferred appellate jurisdiction over interlocutory orders under limited circumstances, including when the district court certifies such an order for review,[2] see 28 U.S.C. § 1292(b).  Pursuant to section 1292(b), three requirements must be satisfied to warrant interlocutory review: the order (1) must "involve[e] a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) as to which "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  Id.  Interlocutory certification is "meant to be used sparingly."  Camacho v. P.R. Ports Auth., 369 F.3d 570, 573 (1st Cir. 2004).

_____

[2] Courts of appeals have discretion whether to accept an interlocutory appeal that has been certified by a district court.  See 28 U.S.C. § 1292(b).

### B.   Analysis

#### 1.   The applicability of the filed-rate doctrine presents a controlling question of law whose resolution would materially advance the termination of this lawsuit (factors 1 and 3).

"A question of law is 'controlling'" within the meaning of § 1292(b) "if reversal would terminate the action."[3] Meijer, Inc. v. Ranbaxy Inc., 245 F. Supp. 3d 312, 315 (D. Mass. 2017) (quoting Philip Morris, Inc. v. Harshbarger, 957 F. Supp. 327, 330 (D. Mass. 1997)). "Typically, when an order is certified for interlocutory appeal, the question will potentially dispose of the entire lawsuit." In re Pharm. Indus. Average Wholesale Price Litig., No. 05-cv-11084, 2008 WL 163644, at *1 (D. Mass. Jan. 16, 2008). "Such questions typically implicate a pure legal principle that can be resolved without extensive consultation to the record." Meijer, 245 F. Supp. 3d at 315.

The Court agrees with USAA that whether the filed-rate doctrine bars all of the relief Plaintiffs request in this case presents a controlling question of law. The position USAA took in its motion to dismiss, and the argument it seeks to present before the First Circuit, is that the filed-rate doctrine bars both the injunctive and monetary relief that Plaintiffs request. [Mot. to Dismiss at 8–9]. Adopting USAA's position would thus result in the termination of the case. Defendants argue that the filed-rate doctrine operates as a "threshold question," akin to "jurisdiction and preemption," [ECF No. 31 at 8], and notes that the First Circuit has described

---

[3] USAA contends that "controlling" carries a less demanding meaning, citing an earlier decision by another session of this Court to suggest that "all that must be shown . . . is that resolution of the issue on appeal could materially affect the outcome of litigation." [ECF No. 31 at 4 (quoting Philip Morris, Inc. v. Harshbarger, 957 F. Supp. 327, 330 (D. Mass. 1997))]. The quoted language, however, borrows from dicta in Phillip Morris, and more recent cases apply the more demanding standard set forth above. See Meijer, Inc. v. Ranbaxy Inc., 245 F. Supp. 3d 312, 315 (D. Mass. 2017).

the doctrine in similar terms.[4]  See Breiding v. Eversource Energy, 939 F.3d 47, 52 (1st Cir.

2019) (characterizing the filed-rate doctrine as "a form of deference and preemption, which

precludes interference with the rate setting authority of an administrative agency" (quoting Wah

Chang v. Duke Energy Trading & Mktg., LLC, 507 F.3d 1222, 1225 (9th Cir. 2007))).  If the

Court of Appeals adopts USAA's position, its mandate to this Court would almost certainly

require dismissal of all pending claims, thus "terminat[ing] the action."  Meijer, 245 F. Supp. 3d

at 315.[5]  For the same reason, the Court believes that interlocutory review would "materially

advance" the "termination of th[is] litigation."  28 U.S.C. § 1292(b); see also Meijer, 245

F. Supp. 3d at 315 (finding that this requirement is "closely tied" to the "controlling-question-of-

law element" and was satisfied where, as here, reversal would likely terminate litigation).

> **2.      Substantial grounds for difference of opinion exist concerning the applicability of the filed-rate doctrine (factor 2).**

"A substantial ground for a difference of opinion arises where an issue involves 'one or

more difficult and pivotal questions of law not settled by controlling authority.'"  Meijer, 245

---

[4] In light of the quasi-preemptive nature of the filed-rate doctrine (at least as asserted by USAA), the Court believes it is appropriate to certify this case for interlocutory review at the pleading stage, notwithstanding the First Circuit's preference for interlocutory review to occur later in district court proceedings.  See, e.g., McGillicuddy v. Clements, 746 F.2d 76, 76 n.1 (1st Cir. 1984) ("[W]e would not normally allow an appeal from a denial of a motion to dismiss . . . ."); In re Ranbaxy Generic Drug Application Antitr. Litig., No. 19-md-02878, 2020 WL 759369, at *1 (D. Mass. 2020) ("Interlocutory appeals, particularly from denials of motions to dismiss, are 'hens-teeth rare' in the First Circuit." (quoting Camacho, 369 F.3d at 573)).  "[I]nitial question[s] of jurisdiction, limitations, or the like" are apt for interlocutory review precisely because early, definitive rulings are likely to promote judicial economy.  16 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure, § 3930 (3d ed. 2024); see e.g., Rothstein v. Balboa Ins. Co., 794 F.3d 256, 258 (2nd Cir. 2015) (considering scope of filed-rate doctrine on interlocutory appeal from denial of motion to dismiss).

[5] Plaintiffs' sole counterargument is that this Court never definitively ruled on the filed-rate doctrine issue, [Opp. at 3–4], but this rejoinder misses the point.  USAA's position, which it preserved in its motion to dismiss, is that it was legal error for the Court not to rule on the filed-rate doctrine at the motion-to-dismiss stage.

F. Supp. 3d at 315 (quoting <u>Philip Morris</u>, 957 F. Supp. at 330).  The filed-rate doctrine issue in this case involves such a question of law, is not settled by controlling authority, and presents substantial grounds for material differences of opinion.

As the Court noted in its ruling on the motion to dismiss, "it is not clear" whether under First Circuit precedent, the filed-rate doctrine "applies to Massachusetts state agencies" and if so, whether federal or state law is the source of the doctrine.  <u>Wright</u>, 2024 WL 2186850, at *5 (citing <u>Arroyo-Melecio v. P.R. Am. Ins. Co.</u>, 398 F.3d 56, 73 (1st Cir. 2005)).  In <u>Arroyo-Melecio</u>, the First Circuit opined that "it is simply not the case that any action which might arguably and coincidentally implicate rates, much less those determined by a state, rather than a federal agency, is governed by the doctrine."[6]  398 F.3d at 73.  The court's observation on the ill-defined scope of the filed-rate doctrine bespeaks the broad grounds for differing views on the issue, which is evident in federal case law.

Notably, several other circuits depart from the position the First Circuit alluded to in <u>Arroyo-Melecio</u>.  The Second, Third, Eighth, and Eleventh Circuits apply the filed-rate doctrine regardless of whether the rates at issue were "approved by federal or state regulators."  <u>Rothstein v. Balboa Ins. Co.</u>, 794 F.3d 256, 261 (2d Cir. 2015); <u>see also</u> <u>In re N.J. Title Ins. Litig.</u>, 683 F.3d 451, 455 (3d Cir. 2012) (same); <u>H.J. Inc. v. Nw. Bell Tel. Co.</u>, 954 F.2d 485, 494 (8th Cir. 1992) (same); <u>Patel v. Specialized Loan Servicing, LLC</u>, 904 F.3d 1314, 1321 (11th Cir. 2018) (same).  These courts generally apply the filed-rate doctrine as a principle of federal common law.  Even so, the source of the doctrine, and thus whether federal or state law should control in diversity

---

[6] Although the quoted language was arguably dicta, "a district court ordinarily gives great weight to the dicta of its court of appeals."  <u>Smith v. City of Bos.</u>, 460 F. Supp. 3d 51, 56–57 (D. Mass. 2020).

cases, is unclear.  Patel, 904 F.3d at 1329 (Jordan, J., dissenting) ("[F]or the federal filed rate doctrine to apply, it must be tied to a federal statute creating a federal regulatory scheme.  When the regulatory scheme is instead created by a state, we must look to that state's law to figure out whether a state-law filed rate doctrine exists.").

Other federal courts have applied state law to the question of whether the filed-rate doctrine applies to state agency action, at least in cases premised on diversity jurisdiction.  See, e.g., Alpert v. Nationstar Mortg. LLC, 983 F.3d 1129, 1130 (9th Cir. 2020) (certifying question to Washington Supreme Court); Epstein v. USAA Gen. Indemnity Co., 636 F. Supp. 3d 1260, 1263–66 (W.D. Wash. 2022) (applying Washington law); Zurich Am. Ins. Co. v. S. Conn. Gas Co., 442 F. Supp. 3d 510, 515–16 (D. Conn. 2020) (making Erie guess as to whether the Connecticut Supreme Court would apply the filed-rate doctrine).  To be sure, states that have considered whether to apply the filed-rate doctrine have "overwhelmingly" embraced it, see S. Conn. Gas, 442 F. Supp. 3d at 516 & n.4 (listing states), but some states, Massachusetts included, vary in material respect from how federal courts approach the doctrine in cases involving state regulators.[7]  Compare Lowell Gas Co. v. Att'y Gen., 385 N.E.2d 240, 244 (Mass. 1979) (explaining that a lawsuit "attack[ing] . . . the validity of rates" approved by state regulators "differ[ed] markedly" from challenges to "unfair, deceptive," and "fraudulent . . . practices" and allowing the latter to proceed notwithstanding the filed-rate doctrine), with

_____

[7] Should the First Circuit accept this matter for interlocutory review and determine that state law applies, further certification to the Massachusetts Supreme Judicial Court ("SJC") may be warranted.  See, e.g., Zurich Am. Ins. Co. v. Med. Prop. Tr., Inc., 88 F.4th 1029, 1035 (1st Cir. 2023) (certifying question to SJC, after granting request for interlocutory review and determining that federal law did not control interpretation of insurance contract otherwise governed by Massachusetts law).  But since only a federal court can determine in the first instance whether the doctrine, to the extent applicable in this case, arises from federal or state law, certification to the First Circuit is the proper antecedent step to a referral to the SJC.

Rothstein, 794 F.3d at 262–63 (barring claim because "[a]ny attempt to determine what part of the rate previously deemed reasonable was a result of the fraudulent acts would require determining what rate would have been deemed reasonable absent the fraudulent acts, and then finding the difference between the two." (citation omitted)).

Further, there is also substantial room for differences of opinion on the related questions of whether the filed-rate doctrine applies to broadly bar legal or equitable challenges to any rate approved by a regulator, or whether the doctrine permits courts to adjudicate allegations of fraudulent or otherwise unlawful practices, even where such claims may affect regulated prices. Compare Composite Co. Inc. v. Am. Int'l Grp., Inc., 988 F. Supp. 2d 61, 61 (D. Mass. Sep. 16, 2013) (allowing claims to proceed where issue concerned whether defendant had "supplied [unreliable data] to the rate-setting agencies" during approval process), and Lowell Gas, 385 N.E.2d at 241–44 (declining to dismiss allegations that utility's deceptive accounting practices led to inflated gas prices despite collateral effect on filed rates), with Wegoland Ltd. v. NYNEX Corp., 27 F.3d 17, 20 (2d Cir. 1994) (finding no exception to the filed-rate doctrine when there are allegations of fraud upon the agency).  The First Circuit's own discussion of the issue offers potentially divergent signals on this point.  Compare Brieding, 939 F.3d at 52 (explaining that "[o]nce filed, a rate may not be collaterally attacked in the courts" (internal quotation marks omitted)), with Arroyo-Melecio, 398 F.3d at 73 ("[I]t is simply not the case that any action which might arguably and coincidentally implicate rates . . . is governed by the doctrine.").

In sum, the Court agrees with USAA that the substantial basis for differences of opinion regarding the filed-rate doctrine further supports certification for interlocutory review at this stage.

**III.    CONCLUSION**

Defendants' Motion to Certify Order for Interlocutory Appeal [ECF No. 30] is

**<u>GRANTED</u>**.

       **SO ORDERED.**

November 5, 2024                                            */s/ Allison D. Burroughs*_____
                                                                        ALLISON D. BURROUGHS
                                                                        U.S. DISTRICT JUDGE